IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------------x
: 
In re: : Chapter 11
:
PHILADELPHIA ENTERTAINMENT AND : Case No. 14-12482 (MDC)
DEVELOPMENT PARTNERS, L.P.,[1] :
:
Debtor. : Re: D.I. 17 and 88
---------------------------------------------------------------x

# DECLARATION OF BRIAN R. FORD IN SUPPORT OF CONFIRMATION OF THE FIRST MODIFIED CHAPTER 11 PLAN OF LIQUIDATION OF PHILADELPHIA ENTERTAINMENT AND DEVELOPMENT PARTNERS, L.P.

BRIAN R. FORD, pursuant to 28 U.S.C. § 1746, declares:

1. I am the sole member of Persil Mangeur LLC, the duly appointed authorized agent and representative of Philadelphia Entertainment and Development Partners, L.P., as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), and am responsible for taking all actions on behalf of the Debtor in connection with this chapter 11 case, including executing all documents and taking such other action as is necessary or appropriate in connection with confirmation and implementation of the *Chapter 11 Plan of Liquidation of Philadelphia Entertainment and Development Partners, L.P.*, dated as of March 10, 2014 [Dkt. No. 16], as modified by the *First Modified Chapter 11 Plan of Liquidation of Philadelphia Entertainment and Development Partners, L.P.*, dated as of May 27, 2014 (the "Modified Plan"

---

[1] The Debtor in this chapter 11 case, along with the last four (4) digits of its taxpayer identification number, is Philadelphia Entertainment and Development Partners, L.P. (3562). The mailing address of the Debtor, solely for purposes of notices and communications, is Philadelphia Entertainment and Development Partners, L.P., c/o Mashantucket Pequot Tribe, 25 Norwich/Westerly Road, North Stonington, Connecticut 06359.

EAST\76775521.1

and, as the same may be further modified, amended, and/or supplemented from time to time, the "Plan").[2]

2. I have personal knowledge of, and am familiar with, the affairs, books and records, and financial condition of the Debtor, and I am authorized to submit this Declaration in support of confirmation of the Plan.

3. Except as otherwise noted, all matters set forth herein are based on (a) my personal knowledge and belief, (b) my review of the relevant documents, including the Plan, the *Disclosure Statement for Chapter 11 Plan of Liquidation of Philadelphia Entertainment and Development Partners, L.P.*, dated as of March 10, 2014 [Dkt. No. 17] (as the same may be amended, modified, and/or supplemented from time to time, the "Disclosure Statement"), and the documents contained in the Plan Supplement, dated May 27, 2014 (as the same may be amended, modified, and/or supplemented from time to time, the "Plan Supplement"), (c) information supplied to me by the general and limited partners of the Debtor and the Debtor's advisors, (d) my view, based on my personal experience and knowledge of the Debtor, or (e) for matters involving the requirements for confirmation of the Plan under the Bankruptcy Code, my reliance on the advice of the Debtor's legal advisors. If called to testify, I could and would testify to the facts set forth herein.

I.  **THE PLAN AND DISCLOSURE STATEMENT.**

4. I am familiar with the terms and provisions of the Plan, the Disclosure Statement, and the various exhibits, schedules, and ancillary documents related thereto, including the Plan Supplement. I was personally involved in the development of and discussions regarding the terms of the Plan and the related documents.

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

EAST\76775521.1

2

5. Following the revocation of the Debtor's Category 2 slot machine gaming license (the "Gaming License") and related litigation in 2010, the Debtor ceased all operations and terminated all employees, having exhausted its liquid resources. The Debtor's interest in the approximately thirty (30) acre parcel of real property located at 1499 S. Christopher Columbus Boulevard in Philadelphia, Pennsylvania (the "Real Property") that was owned by the Debtor and encumbered by a senior mortgage in favor of RBS Citizens, National Association ("RBS Citizens"), the Debtor's secured lender, diminished in value resulting from the revocation of the Gaming License. The Debtor perceived that a bankruptcy case was necessary in order to permit the Debtor to continue to prosecute its rights to recover the $50 million Category 2 slot machine license fee (the "License Fee") that was paid by the Debtor in connection with the Gaming License.

6. The Debtor's General Partner and Limited Partners agreed to fund a bankruptcy case and provide certain support for the litigation to be pursued in connection with the Gaming License and License Fee, conditioned on an agreement with RBS Citizens, defined and described below, and conditioned on their receipt of releases from the Debtor and third parties. The Debtor, together with its advisors and counsel, developed the pre-packaged bankruptcy strategy evidenced by the Plan Support Agreement, as defined and described below, and the Plan.

7. Several months prior to the Petition Date, the Debtor began negotiations with its significant creditors, including RBS Citizens, in an effort to achieve a resolution of the Debtor's debt obligations. These negotiations were largely successful and resulted in the Debtor and RBS Citizens entering into that certain Restructuring, Lockup and Plan Support Agreement, dated as of February 21, 2014 (the "Plan Support Agreement"), which served as the foundation for the Plan.

8.  As provided for in the Plan and Plan Support Agreement, prior to the Petition Date, RBS Citizens, with the Debtor's cooperation, commenced a process to sell the Real Property. In addition, RBS Citizens and the Debtor reached a resolution with the City of Philadelphia regarding certain unpaid real estate taxes assessed against the Real Property, with the agreed upon amount of such unpaid taxes to be paid from the proceeds of the Real Property Sale.

9.  The Plan also provides for the creation of a Liquidation Trust for the benefit of the Debtor's creditors to which any remaining assets of the Debtor will be transferred. Such assets include any claims and Causes of Action belonging to the Debtor and its estate, including any and all claims and Causes of Action that may exist in connection with or arising out of payment of the License Fee and the revocation of the Gaming License against any person or entity that was a transferee or recipient of the License Fee or that was involved, directly or indirectly, in the issuance or revocation of the Gaming License.

10. In addition, as set forth in the Plan, RBS Citizens has agreed to allow Holders of General Unsecured Claims against the Debtor to receive the greater of $3 million in the aggregate or a specified percentage recovery on their Claims before RBS Citizens will have any right to receive a distribution on account of its unsecured deficiency Claim. This will allow for increased recoveries to other Holders of General Unsecured Claims. I believe the Plan presents the best possible chance for recovery for the Debtor's creditors and will allow for a prompt resolution of this Chapter 11 Case.

11. On or about March 10, 2014, prior to commencing this Chapter 11 Case, the Debtor commenced the solicitation of votes to accept or reject the Plan by causing a copy of the Plan, the Disclosure Statement, and the appropriate Ballots and voting instructions to be delivered

to the holders of Class 2 RBS Citizens Secured Claims and Class 3 General Unsecured Claims (together, the "Voting Classes").

12. The Debtor received overwhelming support for the Plan from creditors in the Voting Classes. Specifically, (a) creditors holding 100% in amount and 100% in number of Claims in Class 2 (RBS Citizens Secured Claims) voted to accept the Plan, and (b) creditors holding more than 97% in amount and 90% in number of Claims in Class 3 (General Unsecured Claims) voted to accept the Plan. The Debtor received one Ballot following the Petition Date, which reflected the creditor's vote to accept the Plan and not to opt out of the third party releases provided in the Plan, which Ballot is included in the foregoing numbers. I have been advised by the Debtor's legal advisors that these are the only two Classes entitled to vote on the Plan under applicable bankruptcy law and that both classes voted to accept the Plan, leaving only Class 4 (Subordinated Other Claims) and Class 5 (Interests) that are impaired and deemed to reject the Plan.

13. On March 31, 2014 (the "Petition Date"), the Debtor filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code and is utilizing the chapter 11 process to pursue confirmation of the Plan.

## II. SATISFACTION OF PLAN CONFIRMATION REQUIREMENTS.

14. I understand from the Debtor's legal advisors and believe, based on my review of the Plan and related materials and my discussions with those advisors, that the Plan satisfies all applicable provisions of the Bankruptcy Code and should be confirmed.

**A.  The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code.**

    **i.  The Plan Complies with Section 1122 of the Bankruptcy Code.**

15. I understand that section 1122 of the Bankruptcy Code permits a plan to classify various claims and equity interests into different classes, so long as all the claims and

EAST\76775521.1

5

interests in a particular class are substantially similar. With the exception of the Administrative Expense Claims and Compensation and Reimbursement Claims, which I have been informed by the Debtor's legal advisors need not be classified, Sections 3 and 4 of the Plan provide for the separate classification of Claims against and Interests in the Debtor based upon differences in the legal nature and/or priority of such Claims and Interests. *See* Plan §§ 3 and 4. The Plan designates the following five (5) Classes of Claims and Interests:

- Class 1 Priority Claims;
- Class 2 RBS Citizens Secured Claims;
- Class 3 General Unsecured Claims;
- Class 4 Subordinated Other Claims; and
- Class 5 Interests.

*See Id*.

16. It is my understanding that valid business, factual, and legal reasons exist for classifying the Claims and Interests into separate Classes under the Plan and that the Claims or Interests in each particular Class are substantially similar. The Claims or Interests in each particular Class are substantially similar to the other Claims or Interests, as the case may be, in each such Class. Furthermore, the classification scheme created by the Plan is based on the similar nature of Claims or Interests contained in each Class and not on an impermissible classification factor. Similar Claims have not been placed into different Classes in order to affect the outcome of the vote on the Plan. Because I believe that the Debtor has valid reasons for separately classifying these types of claims and interests, I believe that the Plan satisfies section 1122 of the Bankruptcy Code.

      **ii.**      **The Plan Complies with Section 1123(a) of the Bankruptcy Code.**

17. I understand that section 1123(a) of the Bankruptcy Code sets forth various requirements regarding the appropriate contents of a plan. I believe that the Plan satisfies each of these requirements.

18. Sections 3 through 5 of the Plan (a) designate the different Classes of Claims and Interests, as required by section 1123(a)(1) of the Bankruptcy Code, (b) specify the Class of Claims that is unimpaired under the Plan (*i.e.*, Class 1 Priority Claims), as required by section 1123(a)(2) of the Bankruptcy Code, and (c) specify the treatment of each Class of Claims and Interests that is impaired, as required by section 1123(a)(3) of the Bankruptcy Code. *See* Plan §§ 3, 4, 5.

19. Section 4 of the Plan provides for the same treatment of each Claim or Interest within a Class, as required by section 1123(a)(4) of the Bankruptcy Code. *See* Plan § 4.

20. Sections 6 and 7 of the Plan and various other provisions of the Plan and related documents set forth the means of the Plan's implementation, as required by section 1123(a)(5) of the Bankruptcy Code, including, without limitation, (a) the establishment of the Liquidation Trust and the appointment of the Liquidation Trustee, (b) the transfer of the Liquidation Trust Assets to the Liquidation Trust, to be administered in accordance with the terms of the Plan and the Liquidation Trust Agreement for the benefit of the Liquidation Trust's beneficiaries, and (c) procedures for making distributions to Holders of Allowed Claims. *See* Plan §§ 6 and 7. I believe that the proposed implementation steps have been carefully developed and designed to properly effect the Plan and that, as a result, the Plan provides adequate means for its implementation.

21. As noted above, the Plan provides for the transfer of the Liquidation Trust Assets to the Liquidation Trust, to be liquidated, including through pursuit of the License Fee

Claims, and distributed in accordance with the Plan and the Liquidation Trust Agreement, and the subsequent dissolution of the Debtor. Therefore, the Plan does not expressly provide for the inclusion in the charter of the Debtor a provision prohibiting the issuance of nonvoting securities. Nonetheless, because the Plan does not provide for the issuance of any securities, the issuance of nonvoting securities is impossible. Accordingly, I understand that the Plan complies with section 1123(a)(6) of the Bankruptcy Code insofar as it does not provide for the issuance of nonvoting equity securities.

22. Finally, in Section 6.3 of the Plan, the Debtor discloses the identity of the Liquidation Trustee, and I believe the appointment of the Liquidation Trustee is consistent with the interests of Creditors and Interest Holders and with public policy. Accordingly, I understand that the Plan complies with section 1123(a)(7) of the Bankruptcy Code.

### iii.    The Plan Complies with Section 1123(b) of the Bankruptcy Code.

23. I believe that section 1123(b) of the Bankruptcy Code permits various discretionary provisions to be included in a plan. Based on my review, I believe that the Plan's discretionary provisions are appropriate and satisfy this provision. In particular, consistent with section 1123(b) of the Bankruptcy Code, (a) Sections 3 and 4 of the Plan impair certain Claims and Interests (Claims and Interests in Class 2 (RBS Citizens Secured Claims), Class 3 (General Unsecured Claims), Class 4 (Subordinated Other Claims), and Class 5 (Interests)), (b) Sections 3 and 4 of the Plan leave unimpaired other Claims (Claims in Class 1 (Priority Claims)), (c) Sections 6 and 11 of the Plan provide for the retention of Causes of Action not expressly settled or released under the Plan, and (d) Section 9 of the Plan provides for the assumption and rejection of executory contracts and unexpired leases. *See* Plan §§ 3, 4, 6, and 9.

24. Additionally, I understand that section 1123(b)(6) of the Bankruptcy Code permits a plan to include additional terms so long as they are not inconsistent with the other

provisions of the Bankruptcy Code. Accordingly, Section 11 of the Plan includes various release, exculpation, and injunction provisions that I understand are typically afforded to debtors and certain third parties under chapter 11 plans. In particular, the Plan includes (a) the release by the Debtor of certain parties in interest, (b) the release by Holders of Claims of certain non-debtor third parties, (c) an exculpation provision, and (d) an injunction provision prohibiting parties from pursing Claims or Interests otherwise released under the Plan.

25. I believe these discretionary provisions are appropriate because, among other things, they are the product of extensive good faith and arm's length negotiations, are in exchange for good, valuable, and reasonably equivalent consideration, and are supported by the Debtor and other various parties in interest. These provisions are non-severable, as they are the consideration exchanged with the General Partner and the Limited Partners in consideration for their funding the prepetition preparation of the Chapter 11 Case, the costs of administering the Chapter 11 Case, and the initial funding of the Liquidation Trust. In addition, the Ballots provided all creditors in the Voting Classes with the option to opt out of the third party releases in the Plan. I understand that only one creditor in a Voting Class opted out of the third party releases, and that creditor is the Holder of a disputed Claim.

26. I submit that the release, exculpation, and injunction provisions of the Plan are necessary and appropriate under the circumstances. I further understand that the release, exculpation, and injunction provisions of the Plan are not inconsistent with the Bankruptcy Code and, thus, I believe the requirements of section 1123(b) of the Bankruptcy Code are satisfied.

Debtor Releases.

27. Section 11.6 of the Plan provides that, on the Plan Confirmation Date, the Debtor and its Related Persons will release claims and Causes of Action against certain parties in interest in the Chapter 11 Case. Pursuant to this provision, the Debtor is releasing the Released

EAST\76775521.1

Parties—including the following non-Debtor parties: (a) RBS Citizens and its Related Persons; (b) the Liquidation Trustee and its Related Persons; (c) FDC/PEDP GP, LLC, as general partner of the Debtor (the "General Partner"), and its Related Persons; (d) Washington Philadelphia Investors, L.P. and Washington Philadelphia Investors I, L.P., as limited partners of the Debtor (collectively, "WPI"), and their Related Persons; and (e) FDC Philadelphia, LP ("FDC"), as limited partner of the Debtor, and its Related Persons; provided that the releases in favor of the General Partner and FDC are conditioned upon the FDC Funding Portion (*i.e.*, an amount equal to $200,000 that will constitute part of the Initial Funding Amount) being funded by or on behalf of FDC prior to the Effective Date. I believe the Debtor releases are critical to the successful implementation and confirmation of the Plan, and should be approved by the Court.

28.     First, I believe there is an identity of interest between the Debtor and the Released Parties arising out of the shared "common goal" of confirming and implementing the Plan.

29.     Second, I believe that the Released Parties all made important contributions to the Chapter 11 Case, including, among other things, negotiating and formulating the Plan Support Agreement and Plan. In addition, the Released Parties have provided other specific and substantial consideration to the Chapter 11 Case, including (a) RBS Citizens' agreement to allow other Holders of General Unsecured Claims to receive a specified percentage recovery on account of their Claims before RBS Citizens will have any right to receive a distribution on account of the RBS Citizens Deficiency Claim, and (b) the General Partner's, WPI's, FDC's, and RBS Citizens' agreement to pay their respective portions of the Initial Funding Amount and forego or partially subordinate, as applicable, any right to receive repayment of the same.

30. Third, I believe the Released Parties' contributions and material concessions have allowed the Chapter 11 Case to move expeditiously towards confirmation. I believe that without these releases, the Released Parties would not have been willing to contribute to the Plan process, which would have eliminated the ability to commence the Chapter 11 Case and propose the Plan.

31. Fourth, I understand that creditors have overwhelmingly voted to accept the Plan, with creditors holding more than 97% in amount and 90% in number of Claims in each of Class 2 and Class 3 voting to accept the Plan. In addition, I understand that there have been no objections to any releases, including the Debtor releases, provided under the Plan.

32. Fifth, I believe that the creation of the Liquidation Trust and the liquidation of the Liquidation Trust Assets for the benefit of creditors presents the best possible chance for a recovery for the Holders of Claims affected by the Debtor release.

33. Accordingly, I believe that, under the specific facts and equities of this Chapter 11 Case, the Debtor's release of the Released Parties constitutes a valid exercise of the Debtor's business judgment and should be approved.

Third Party Releases.

34. Section 11.8 of the Plan provides for the release of the Debtor, the Liquidation Trust, and the other Released Parties by certain third parties of any and all liens, claims, causes of action, liabilities, encumbrances, security interests, interests or charges of any nature or description whatsoever relating to the Debtor, the Chapter 11 Case, or affecting property of the estate (as set forth more fully in Section 11.8 of the Plan, the "Third Party Release"). The Third Party Release applies only to those Persons who have (a) voted to accept the Plan or who are presumed to have voted to accept the Plan under section 1126(f) of the Bankruptcy Code, (b) are entitled to vote to accept or reject the Plan and who vote to reject the Plan or abstain from voting,

and (c) do not mark their Ballots as opting out of the Third Party Release under the Plan. *See* Plan § 11.8. The Third Party Release does not encompass claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence.

35. The Third Party Release was conspicuously included in the Plan, Disclosure Statement, and Ballot, and other notice materials, and Holders of Claims in the Voting Classes were given the opportunity to opt out of the Third Party Release on their Ballots. In addition, I understand that the Third Party Release is not binding on any party that opted out of the Third Party Release. I understand that such consensual releases are permissible under applicable law and, therefore, I believe that the Third Party Release should be approved.

Exculpation.

36. Section 11.7 of the Plan provides for an exculpation limiting the liability of the Released Parties for acts or omissions in connection with, related to, or arising out of this Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, including without limitation, the negotiation and solicitation of the Plan. The provision exculpates the Debtor and certain other parties that have played significant roles in connection with this Chapter 11 Case and the Plan. Further, the exculpation provision does not relieve any party of liability for gross negligence or willful misconduct.

37. I believe that each of the Released Parties played an important and active role in negotiating and formulating the Plan, has significantly contributed to the Plan and this Chapter 11 Case, and the cooperation of each party is necessary to implement the provisions of the Plan. I believe that without protection from liability, key constituents would have been unwilling to cooperate in connection with the formulation and distribution of the Plan and prosecution of the Chapter 11 Case.

Injunction.

38. Section 11.3 of the Plan contains an injunction to enforce the releases and exculpation provisions in the Plan. *See* Plan § 11.3. Because I believe the releases and exculpation provisions are central to the Plan, I believe the injunction is also essential. Thus, if the Court finds that the releases and exculpation provisions are appropriate, I believe the Court should also find the injunction provision is appropriate. Moreover, I believe that the injunction is narrowly tailored to achieve its purpose.

        iv.        **The Plan Complies with Section 1123(d) of the Bankruptcy Code.**

39. Section 9 of the Plan provides that any monetary amounts by which any executory contract or unexpired lease that may be assumed under the Plan is in default shall be satisfied by payment of the required cure amount, if any. *See* Plan § 9. Therefore, I believe the requirements of section 1123(d) of the Bankruptcy Code are satisfied.

**B.    The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code.**

40. Based on my discussions with the Debtor's legal advisors, I believe that the Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable law in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan.

**C.    The Plan Complies with Section 1129(a)(3) of the Bankruptcy Code.**

41. The Plan is the product of arm's length negotiations among the Debtor, RBS Citizens, and other parties in interest. I believe the Plan allows Holders of Allowed Claims to realize the highest possible recovery under the circumstances from proceeds of liquidation of the Liquidation Trust Assets, including the License Fee Claims. As such, I believe the Plan was proposed with the legitimate and honest purpose of providing the greatest possible distribution to

the Debtor's creditors. Additionally, I believe the Plan has been proposed in compliance with all applicable laws, rules, and regulations. Therefore, I believe the Plan satisfies the requirements of 1129(a)(3) of the Bankruptcy Code.

**D.    The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code.**

42.    Based on my discussions with the Debtor's legal advisors, I believe the Plan complies with section 1129(a)(4) of the Bankruptcy Code, as all payments made or to be made by the Debtor for services rendered and expenses incurred in connection with the Chapter 11 Case, including, without limitation, all Compensation and Reimbursement Claims through the Effective Date, will be paid only after allowance of such Claims by the Court to the extent not already approved and paid in accordance with orders of the Court.

**E.    The Plan Complies with Section 1129(a)(5) of the Bankruptcy Code.**

43.    The identity of the Liquidation Trustee has been fully disclosed in Section 6.3 of the Plan, and I believe the appointment of the Liquidation Trustee is consistent with the interests of Holders of Claims against and Interests in the Debtor and with public policy. Accordingly, I believe that the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

**F.    Section 1129(a)(6) of the Bankruptcy Code is Inapplicable.**

44.    Because the Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction, I understand that section 1129(a)(6) is inapplicable.

**G.    The Plan Complies with Section 1129(a)(7) of the Bankruptcy Code.**

45.    I believe that, with respect to each Impaired Class of Claims or Interests, each Holder of a Claim or Interest in such Impaired Class (a) has voted to accept the Plan, (b) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the

EAST\76775521.1

14

Debtor was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date, or (c) has agreed to receive less favorable treatment.

46. Accordingly, I believe that the Plan satisfies the "best interests test" because no Holder of a Claim or Interest would receive or retain property on account of its Claim or Interest if Debtor was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date that is more than such party will receive under the Plan.

H.   **The Plan Complies with Sections 1129(a)(8) and 1129(b) of the Bankruptcy Code.**

47. As set forth in the *Declaration of Daniel G. Egan of DLA Piper LLP (US) Regarding the Mailing, Voting, and Tabulation of Ballots Accepting and Rejecting the Chapter 11 Plan of Liquidation of Philadelphia Entertainment and Development Partners, L.P.*, dated as of April 2, 2014 [Dkt. No. 18], as supplemented by the *Supplemental Declaration of Daniel G. Egan of DLA Piper LLP (US) Regarding the Mailing, Voting, and Tabulation of Ballots Accepting and Rejecting the Chapter 11 Plan of Liquidation of Philadelphia Entertainment and Development Partners, L.P.*, dated as of May 27, 2014 (collectively, the "Voting Certification"), Class 2 (RBS Citizens Secured Claims) and Class 3 (General Unsecured Claims) voted to accept the Plan. I understand that Holders of Claims in Class 1 (Priority Claims) are unimpaired and, therefore, deemed to accept the Plan, but Holders of Claims or Interests, as applicable, in Class 4 (Subordinated Other Claims) and Class 5 (Interests) are deemed to reject the Plan. As such, I understand that the Plan does not meet the requirements of section 1129(a)(8) of the Plan as to Classes 4 and 5. Nevertheless, I understand that the Plan may still be confirmed because the Plan satisfies the "cram down" provisions of 1129(b) of the Bankruptcy Code.

48. It is my understanding, that a chapter 11 plan may be confirmed notwithstanding the rejection or deemed rejection by a class of claims or interests if the plan does not discriminate unfairly and is fair and equitable as to that class. It is my further understanding

EAST\76775521.1

15

that (a) the "fair and equitable" requirement is satisfied if the holders of claims and interests in classes junior to the rejecting classes are not receiving any property under the plan, and (b) the plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are substantial similar to those of that class.

49. I believe the Plan's treatment of Classes 4 and 5, which will not receive anything under the Plan, is proper because there is no similarly situated class of Claims or Interests, as applicable, classified under the Plan. Thus, the Plan does not discriminate unfairly. In addition, no Holder of a junior Claim or Interest will receive any distribution unless the Holders of higher priority Claims receive the full value of their Claims or the Holders of such higher priority Claims have consented to such treatment. No Holders of any Claims or Interests that are junior to Classes 4 and 5 will receive or retain any property under the Plan on account of such junior Claims or Interests, and no Holders of Claims or Interests senior to Classes 4 and 5 are receiving more than 100% recovery on account of their Claims or Interests. As such, I believe the Plan does not violate the "fair and equitable" requirement of section 1129(b)(1) with regards to Classes 4 or 5. Accordingly, it is my understanding that the Plan meets the requirements of section 1129(b) of the Bankruptcy Code.

**I.    The Plan Complies with Section 1129(a)(9) of the Bankruptcy Code.**

50. I understand that all administrative and priority claims against the Debtor will be satisfied in the manner required by section 1129(a)(9) of the Bankruptcy Code, unless such holder of a particular claim has agreed to different treatment of such claim. *See* Plan §§ 2, 3, and 4.

**J.    The Plan Complies with Section 1129(a)(10) of the Bankruptcy Code.**

51. The Voting Certification shows that two Impaired Class of Claims (Classes 2 and 3) have accepted the Plan, determined without including any acceptances of the Plan by any

EAST\76775521.1

16

insider. Accordingly, I understand that the Plan complies with section 1129(a)(10) of the Bankruptcy Code.

**K.    The Plan Complies with Section 1129(a)(11) of the Bankruptcy Code.**

52.    I understand that, to satisfy the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code, the Debtor must demonstrate that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further reorganization, of the Debtor.

53.    The Plan contemplates the liquidation of the Debtor's remaining assets for distribution to creditors in accordance with the Plan and the Liquidation Trust Agreement. Consequently, confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor, except as contemplated by the Plan.

**L.    The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code.**

54.    Section 13.2 of the Plan provides that all fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court, shall be paid on or before the Effective Date or thereafter as and when they become due and owing. *See* Plan § 13.2. Thus, I understand that the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

**M.    Sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code are Inapplicable.**

55.    With regards to these sections of the Bankruptcy Code, the Debtor (a) has no pension or retiree benefits, (b) is not subject to any domestic support obligation, (c) is not an "individual," and (d) was at all relevant times a moneyed, business, or commercial corporation. Thus, I understand that sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Plan.

**N.    The Plan Complies with Section 1129(c) of the Bankruptcy Code.**

56.    The Plan is the only chapter 11 plan that has been proposed in this Chapter 11 Case and, thus, I understand that the requirement of section 1129(c) has been met.

**O.    The Plan Complies with Section 1129(d) of the Bankruptcy Code.**

57.    The principal purpose of the Plan is not the avoidance of taxes or the application of section 5 of the Securities Act of 1933. Thus, I understand that the requirements of section 1129(d) have been met.

[*Text Continues on the Next Page*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: May 27, 2014
Philadelphia, Pennsylvania

By: Brian R. Ford
Title: Sole Member, Persil Mangeur LLC

EAST\76775521.1